# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD POTTS, | : | |
| Plaintiff | : | Civil No. 3:09-CV-1805 |
| v. | : | (Judge Caputo) |
| RONNIE HOLT, et al., | : | (Magistrate Judge Carlson) |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

In this action, Plaintiff Richard Potts, an inmate serving a life sentence at the United States Penitentiary Canaan in Waymart, Pennsylvania ("USP Canaan"), has brought a lawsuit alleging that the Defendants in this case violated his constitutional rights by serving him non-Halal certified foods and causing him to consume this food unknowingly, which has allegedly infringed upon his religious beliefs as a Muslim. As a remedy for this alleged violation, Plaintiff seeks compensatory and punitive damages in the aggregate amount of $15 million.[1]

---

[1] Although he has not adequately pleaded a claim for equitable relief, Potts suggests at times that he is also seeking an injunction to require the Defendants to comply with the prison's dietary policies and to ensure his rights to practice his religious faith within USP Canaan.

Defendants have moved for entry of an order either dismissing Plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, alternatively, for summary judgment under Rule 56 of the Rules. In their motion, Defendants assert that Potts has failed to exhaust his administrative remedies as a prerequisite to bringing suit under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA") and 18 U.S.C. § 3626. Additionally, Defendants argue in the alternative that even if Potts did exhaust his administrative remedies, the complaint should be dismissed because it fails adequately to allege personal involvement on the part of the named Defendants in the conduct alleged.

Upon consideration of the motion, the briefs submitted in support of and opposition to the relief sought, and the evidence submitted by both parties with respect to the threshold issue of exhaustion, we conclude that Potts clearly did not exhaust his administrative remedies before bringing this action and the complaint should, therefore, be dismissed. Additionally, because we find it is beyond dispute that Plaintiff failed to exhaust his claims properly, any further amendment to the complaint would be futile and should not be permitted. Plaintiff has had adequate notice of Defendants' contentions regarding his failure to exhaust, and his own admissions in the evidence of record, and in response to Defendants' showing,

demonstrate that he did not exhaust his claims as required by the PLRA. For this reason alone, the complaint should be dismissed and the case closed.

## II.     BACKGROUND[2]

Richard Potts is currently serving a term of life imprisonment following his conviction for conspiracy to distribute cocaine base, murder in furtherance of a continuing criminal enterprise, and aiding and abetting. (Doc. 23, Def. Statement of Material Facts ¶ 1) (hereafter, "SMF ¶ __".) Since entering the federal correctional system, Potts has declared to the Federal Bureau of Prisons that he is a Muslim. (Id. ¶ 2.)

Potts has sued the named Defendants in this action, Warden Ronnie Holt and Food Services Administrator Ralph Gundrum, alleging that they violated or otherwise infringed upon his right to practice his Muslim faith by failing to serve him "a proper certified religious meal," (Compl., at 3), and asserting generally that he has somehow

---

[2] The facts recited in this report are taken from the allegations in Plaintiff's complaint, and also from Defendants' statement of material facts, unless Plaintiff has properly disputed them in his responsive brief. It should be noted that in their statement of material facts, Defendants have generally included only allegations set forth in Plaintiff's complaint, official records detailing Potts's conviction and sentence, and official records that were part of the administrative grievance process – much of which Potts himself attached as exhibits to the complaint. Additionally, in their statement Defendants outline the administrative grievance procedure employed by the Bureau of Prisons, and include citations to sections of the Code of Federal Regulations that establish these administrative procedures. Accordingly, although we refer to Defendants' statement of facts in reciting the relevant background information, these generally are facts that Plaintiff has pleaded, or are reflected in documents that Plaintiff has identified, or are otherwise facts based upon codified regulations.

been deceived into consuming food that was either not kosher or halal. Specifically, Potts contends that his right to the free exercise of his religious beliefs was violated when USP Canaan "purchased and served [dry breakfast] cereals that: (1) Are not Khosher [sic] or Halaal [sic]. (2) Are manufactured in plants that also handle/manufacture pork products – to me on the certified processed foods diet (commonly called Common fare). For 150 days this cereal was served and caused me to eat a product that is not acceptable to my religious dietary needs." (Id.) As a result of his alleged consumption of the cereal at USP Canaan, Potts avers that he suffered humiliation and ridicule from fellow inmates and from employees at the prison. (Id.) As a remedy, Potts seeks $15 million in compensatory and punitive damages. (Id. at 6.) It appears that Potts may also be seeking some type of equitable relief in the form of an injunction to compel the Defendants to ensure he is able to practice his religious beliefs at the prison, though he does not clearly articulate any such demand in the complaint.

The Bureau of Prisons has established an administrative remedy procedure for addressing the complaints of federal inmates. (SMF ¶ 9.) Pursuant to this procedure, inmates are initially required to present their complaints to prison staff, and staff are to attempt to resolve the matter. (SMF ¶ 10.) If this informal resolution is unsuccessful, the inmate is to execute a grievance form to bring the matter to the

4

attention of the warden within 20 calendar days of the relevant event. (SMF ¶ 11.) Following the submission of a grievance, the warden is required to respond to the inmate's complaint within 20 days. (SMF ¶ 12.) If the inmate remains dissatisfied with the warden's response, the inmate may appeal to the BOP Regional Director within 20 calendar days. (SMF ¶ 13.) If the response of the Regional Director fails to resolve the matter to the inmate's satisfaction, the inmate may appeal to the Central Office of the BOP within 30 calendar days. (SMF ¶ 14.) The Central Office's decision on appeal is the final administrative ruling within the administrative grievance process. (Id.) If an inmate's requested remedy is rejected, it is returned to him along with a written explanation regarding the reasons why it was rejected. (Id. ¶ 16.)

Following his arrival at USP Canaan on December 11, 2008, Potts has filed four administrative grievances. (Id. ¶ 17.) On April 27, 2009, Potts filed administrative remedy 537152-F1 with staff at USP Canaan demanding that the institution comply with Program Statement 5360.09, Religious Beliefs and Practices, and contending that his breakfast meal lacked certification that it was in compliance with Program Statement 5360.09. (Id. ¶ 18; Compl. at 14.) On May 14, 2009, Defendant Holt responded to this grievance by explaining to Potts the procedure for

the preparation and service of certified meals, and informing him that no uncertified foods are served to inmates on religious meal trays. (SMF ¶ 19; Compl. at 13.)

On June 10, 2009, Potts sought to appeal the denial of his grievance to the Regional Director by filing administrative remedy 537152-R1. (SMF ¶ 20; Compl. at 12.) The Regional Director rejected Potts's appeal as untimely and returned the appeal to Potts. (SMF ¶ 21.) Despite this finding that Potts's appeal was untimely, Potts filed an appeal with the Central Office of the BOP on July 7, 2009. (Id.; Compl. at 10-11.) On July 22, 2009, the Central Office also rejected Potts's appeal after concurring with the judgment of the Regional Office that Potts's previous appeal was untimely. (SMF ¶ 22; Compl. at 9.)

Following this administrative process, Potts commenced the instant action by filing a complaint on September 18, 2009.

## III. **STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure, which governs motions to dismiss like the motion lodged by the Commonwealth Defendants in this case, provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for

the Third Circuit has recently aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips [v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983) As the Supreme Court held in <u>Bell Atlantic</u>

Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950. Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

Finally, particularly relevant to the motion pending before the Court, in reviewing a Rule 12(b)(6) motion a court must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the

9

plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

A court converting a motion to dismiss into a motion for summary judgment must normally give notice to the parties of its intention to do so. Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989). A district court should not enter summary judgment without a hearing unless the district court's reasoning is completely "unambiguous." Id. at 341. However, where a motion to dismiss has been framed alternatively as a motion for summary judgment, the United States Court of Appeals for the Third Circuit has concluded that the alternative filing is "sufficient to place the parties on notice that summary judgment might be entered." Latham v. United States, 306 Fed. Appx. 716, 718 (3d Cir. 2009) (citing Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996)).

Summary judgment, in turn, is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is

material only if it might affect the outcome of the suit under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the non-moving party's evidence is insufficient to carry that burden." Id. A non-moving party, in turn, has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 138 (3d Cir. 2001). In conducting our analysis, we are to view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).

## IV. DISCUSSION

Defendants' chief argument in support of their motion to dismiss is that Plaintiff failed to exhaust his administrative remedies through the BOP administrative grievance process before bringing this Bivens action in federal court.[3] According to

---

[3] Although Plaintiff purported to bring this claim under 42 U.S.C. § 1983, in reality Plaintiff has brought a so-called Bivens action against federal officials, rather than a claim against state officials under § 1983. See Bivens v. Six Unnamed Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (a citizen suffering a compensable constitutional injury may invoke federal question jurisdiction to seek an award of monetary damages against federal agent).

Defendants, this failure to exhaust absolutely bars Plaintiff from litigating his claims in this Court. Upon consideration, we agree.

The Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 or any other federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In keeping with the mandatory language of the statute, the Third Circuit has made clear that the PLRA constitutes a bright-line rule, and requires that inmate-plaintiffs must exhaust all available administrative remedies before bringing a suit in federal court challenging prison conditions. See Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000). The PLRA's exhaustion requirements applies to Bivens claims, such as those in the instant case. Nyhuis, 204 F.3d at 68 (holding that PLRA applies to Bivens claims seeking monetary damages). While this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is strictly enforced by the courts. This rigorous enforcement is mandated by a fundamental recognition that § 1997e's exhaustion requirement promotes important public policies. As the United States Court of Appeals for the Third Circuit has noted:

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative

process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and, (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner

> litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75 -76 (3d Cir. 2000)(citations omitted) The United States Supreme Court has underscored that the PLRA's exhaustion requirement is applicable to all inmate suits concerning prison conditions, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002) (citation omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Spruill v. Gillis, 372 F.3d 218, 228-230 (3d Cir. 2004). Instead, courts have typically required across-the-board administrative exhaustion by inmate-plaintiffs who seek to pursue claims in federal court. Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Id. at 230.[4] The Third Circuit further explained that

---

[4] For example, an inmate-plaintiff cannot avoid the exhaustion requirement by contending that "there is not further process available to the inmate within the grievance system (which would happen if, say, an inmate fails to file an administrative appeal)." Spruill, 372 F.3d at 227-28. To the contrary, an inmate will be found to have procedurally defaulted on his claims unless during the administrative process he "availed himself of every process at every time (which would require all appeals to be timely pursued, etc." Id. at 228.

the "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231. In practice, the procedural default rule operates to bar an inmate-plaintiff from bringing suit in federal court if he has failed properly to pursue his grievance through the entire process prescribed by the prison's administrative grievance policy, including the intermediate and final stages of appeal. Id. at 231-32.

With these considerations in mind, we turn our attention to consideration of whether Potts properly and fully exhausted his administrative remedies before bringing suit in this Court. As an initial matter, Potts actually appears to concede that he did not exhaust his claims. (Compl. at 3.) However, he argues, in extremely general fashion, that his failure to complete the grievance process was the result of prison staff impeding his efforts. Review of the documents that Potts himself has attached to his complaint, as well as those documents that Defendants submitted as part of their dispositive motion, discredit Plaintiff's belated efforts to shift blame to prison officials for his failure to timely appeal adverse administrative decisions. In fact, two considerations lead us to conclude that Plaintiff's vague assertions that his untimely filings were due to the fault of his corrections officer are neither credible nor sufficient to withstand Defendants' motion.

First, nowhere in any of the administrative grievance paperwork that he attached to his complaint does Plaintiff contend that any corrections official in any

way frustrated his appeals, or did anything to interfere with him filing a timely appeal with either the Regional Director or the Central Office. Indeed, even after the Regional Director rejected Plaintiff's appeal *solely on the basis that it was untimely*, Plaintiff did not dispute the asserted untimeliness, or suggest that prison officials were to blame for the late filing, but merely reiterated the general nature of his grievances to the Central Office. Plaintiff had clearly been placed on notice that he had failed to adhere to the administrative appeal process in place, yet he declined to advise either the Regional Director or the Central Office of the reasons that he now claims his filings were untimely; indeed he did not even acknowledge the untimeliness of his appeals, or any of the alleged reasons therefor, at any point in any of his administrative filings. Additionally, Plaintiff never petitioned the BOP for extension of time to file his appeals, though he could have done so.[5] In addition to these facts, we note that the appeals that Plaintiff filed with the Regional Director and the Central Office are especially abbreviated documents, essentially do no more than

---

[5] We recognize that there are no doubt some limits on the knowledge of most inmate-plaintiffs regarding the scope of remedies available within the regulations governing the administrative review process. Nevertheless, we note that these regulations expressly contemplate that inmates attempting to appeal adverse administrative decisions may seek extensions of their filing deadlines. See 28 C.F.R. § 542.14(b). According to Defendants, such extensions are liberally granted. (Reply Br. at 5.) At no point has Plaintiff suggested that he sought an extension, which is in keeping with his practice of declining to address the issue of timeliness in any of his administrative filings.

repeat the allegations first filed with the warden, and which are so short that they conceivably could have been written in a matter of minutes. Without diminishing the importance of these issues to Plaintiff, and the sincerity of his concerns regarding an alleged infringement upon his right to practice his faith while in custody, we find it to be beyond dispute that Plaintiff procedurally defaulted in prosecuting and appealing his administrative grievances, and as a result he has failed properly to exhaust his claims as required by the PLRA. As explained above, the consequence of this failure is that Potts is now prohibited from pursuing these claims in federal court. Indeed, we note that courts have refused to allow an uncorroborated assertion by an inmate that he was prevented by others from timely exhausting his administrative remedies to defeat a summary judgment claim. See Bolla v. Strickland, 304 F.App'x 22 (3d Cir. 2008)( affirming summary judgment on exhaustion grounds despite inmate's assertion that untimeliness in his filing was due to the prison's depriving him of access to a writing utensil, noting in part that the inmate "offers nothing more to support these bare assertions" that he was prevented from timely exhausting his grievance).

Mindful that there is no futility exception to the PLRA's administrative exhaustion requirements, and in consideration of the entire record, and the unsupported and entirely unpersuasive contention that he was somehow prevented

from timely and properly exhausting his administrative remedies, we conclude that Potts's complaint must be dismissed and judgment entered in favor of Defendants. Furthermore, because we find it beyond dispute that Plaintiff failed to exhaust his remedies, we find it unnecessary to consider Defendants' secondary argument that neither the warden nor the food services administrator had any personal involvement in the constitutional violations alleged in this action. Additionally, because we find based on the record submitted, and upon Potts's own admissions, that he has procedurally defaulted on his administrative grievances, and, therefore, did not and cannot fully exhaust his remedies, any further leave to amend the complaint would be futile and should not be permitted.[6]

## V.   **RECOMMENDATION**

Accordingly, for the reasons set forth about, IT IS RECOMMENDED that Defendants' motion to dismiss or, in the alternative, for entry of summary judgment, be GRANTED, that the action be dismissed and the case closed.

> Plaintiff is further placed on notice that pursuant to Local Rule 72.3:
> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in

---

[6] We recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, See Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007). However, it is unnecessary to permit further amendment when granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 8th day of April, 2010.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge